The next matter, number 181443, Barbara Fawcett v. Citizens Bank, N.A. I would like to reserve three minutes, if I may, sir. Yes. Good morning. I am Edward Haber from Shapiro Haber & Ermey. With me is my colleague, Patrick Vallely. We represent the plaintiff, Barbara Fawcett, in this matter. This case and this appeal raises several questions, the first three of which are, when Citizens Bank advanced funds to the plaintiff to cover her overdrafts, did Citizens Bank extend credit to the plaintiff? The second question is, were the bank's subsequent sustained overdraft charges, which it charged because the plaintiff did not timely repay the advance's interest, under Section 7.4001A of the National Bank Act? And the third question is, has the Office of the Comptroller of the Currency, the OCC, answered those questions? I speak to the last of those questions first. In light of the express statements made by the OCC as quoted and discussed in plaintiff's briefs, it is apparent that the OCC has not answered those questions. In fact, the OCC has expressly stated that it has not answered those questions. Counsel, I understand your argument as presented in the briefs, but I'd like you to focus on the interpretive of Letter 108-2 from May 17, 2007, and tell me why you think that letter does not answer the questions before us. That's a separate question from the amount of deference that we would owe that letter. I'd be happy to address that, Judge Lynch. All right. I say a little facetiously that we're in a wonderful technological age, and if one does a simple computer search of the interpretive letter for 7.4001A, one finds no hits. If you do a computer search of the interpretive letter... So what? I'm sorry? So what? You have not challenged the authenticity of the letter. It is issued by the Comptroller of the Currency. So could I encourage you to answer the question I asked? Yes, Your Honor. The interpretive letter, the point I was making, does not... The OCC in the interpretive letter is not talking ever about the regulation at issue in this case and the regulation that... It is talking about a factual situation which is essentially equivalent to the facts before this Court. I respectfully submit... Do you agree on that? I don't agree, Your Honor. I think that the point that the OCC was addressing in the interpretive letter was if the fees at issue, assuming the fees at issue, you know, were fees governed by 4.002, which everyone understands governs fees, whereas whether or not something is interest is governed by 4.001. Counsel, just to hopefully help you answer Judge Lynch's question, is it your position that that interpretive letter deals only with initial overdraft fees as opposed to the sustained fees? Is that your position? I think that the letter is focused on initial overdraft fees, but I think the point is more fundamental. Before we go on to that, footnote 3 of that letter refers explicitly to the equivalent of sustained overdraft fees. I agree, Your Honor. You agree. Therefore, in answer to Judge Lopez's question, you would agree that the letter goes to sustained overdraft fees and not just initial fees. Yes or no, and then move on and tell me why my question doesn't make sense to you. I think the letter can be read to be talking about in the context of assuming that those fees are fees, or those charges are fees, whether or not those charges, the way in which the bank was charging them and the way in which the bank was determining how much they should be, complied with 4.002. That is the thing that the OCC was asked. That was the question that was asked. That was what it was answered by. 4.002 regulates how banks charge fees. 4.001 regulates how banks, whether fees are interest. 4.002, the interpretive letter doesn't speak at all to the question that's before this court. Counsel, the fees at issue here, how do they differ from the charges that were being addressed in that interpretive letter? I submit I'm not saying that they're different. What I'm saying is that the OCC was not being asked a question that this court has to decide in this appeal. It was simply a fundamental different question. We don't stand here saying that the way in which the Citizens Bank dealt with its fees had any violation of or impact on 4.002. The question here is, were those fees interest? Was the advancement of those funds an extension of credit? Nowhere in the interpretive letter does the OCC discuss the concept of extension of credit. Not once. The phrase doesn't appear in the interpretive letter. And I respectfully submit that, obviously, one has to look at the entire body of law that is in front of you in the briefs. But if you look at the interpretive letter, where the OCC doesn't mention the regulation at issue here, doesn't mention the concept of extension of credit, and compare it with what the OCC said in its rulemaking about 4.001. In 2001, when the OCC sent out a request for comment, because it was contemplating amending the regulation at issue here, 4.001, and the OCC expressly said, and let me quote please, as a matter of practice, banks often vary the amount of charges they impose depending on whether they honor the customer's check. A bank that pays a check drawn against insufficient funds may be viewed as having extended credit to the account holder. Consistent with that approach, the difference between what the bank charges a customer when it pays the check and when it disowns the check and returns it could be viewed as interest within the meaning of 12 U.S.C.A. 5. Counselor, if we were to overturn the decision below, send it back so that discovery could proceed, what would you learn that you don't already know about how this regime works? What would you learn that would permit a court to decide that this is in fact interest and not some kind of administrative charge that the bank charges for these kinds of accounts? What would you learn that would allow it? Thank you for that question because I think it raises the core question as to why this is not a decision that this court should make and nor should the district court have made as a matter of law and the pleadings. The question of whether the advances that a bank makes when it honors an overdraft is an extension of credit, and ultimately that drives everything Would you answer the question? Yes, I am answering the question. No, you're not. I apologize, Your Honor. Get to it. We need a complete factual record. What are the facts? What was the contract between the plaintiff and Citizens Bank? They know it, we don't, you don't. What was the purpose of the sustained overdraft fees? Were they paying for any service provided by the bank other than the continued advancement of the funds to honor the overdrafts? How did Citizens itself account on its financial statements for the advances that it had made? Did it treat them in the same way as it treated outstanding balances owed to citizens pursuant to financial transactions that undisputedly involved the extension of credit? Does, another example, does Citizens view unpaid balances as a debt that it collects in the same way as it would seek to collect other debts that, again, were undisputedly the result of an extension of credit? Now, interestingly, we actually know the answer to that question because, as we point out on pages 26 and 27 of our reply brief, if an overdraft advance is not paid, not repaid by the customer, Citizens sends the customer a collection letter that expressly says, and I quote, please note that this letter is designed to collect a debt, close quote. Now, I have an admission to make. That letter is not in the record. It didn't go to the plaintiff. It went to another customer of Citizens. And that person came to us. But that's my point. It's not in the record, but it should be. It is precisely our point that, with reasonable discovery, we would gather relevant facts that bear on the mixed law fact question of whether or not these advances are an extension of credit. Can I just ask you a couple of questions? Sure. What happens after the third $30 charge? There's no further, in the case of Citizens here, there's no further charge after the third $30 charge. Or at least there's no allegation in the complaint that there's anything, any additional charges. That's correct. Our allegation, which we think is factually accurate. So to the extent that there is, that it's interest, that interest rate is variable depending on how long it takes to pay it back, I take it. Well, there's no interest rate. It is a flat fee. Well, your complaint alleges that there's an interest rate. It does it four different times. What we say is that the rate would be in excess of the legal rate. And you have specific numbers that you use in the complaint. So you are saying there's an interest rate. What we're saying is the amount of interest, the rate of interest that is charged is excessive, yes. And that would vary if the debt were outstanding for a longer period of time, because you say that the charges stop after the third, so if they stop. So I have another question, too. The rate, the amount of the fee, as the bank calls it, doesn't vary depending on the amount of the overdraft, I take it. That is correct. It could be $10. Insufficient funds could be $10,000. And it's still going to be the same initial fee and then up to three additional charges. That's correct, Your Honor. That's correct. But except with an extremely high overdraft, and I don't think that that is the practice to honor extremely high overdrafts, the rate would always be in excess of the statutory maximum. Thank you.  I'm sorry. You just said. Counsel. I'm sorry. You just said if the amount of the overdraft is above a certain amount, the bank will never make the choice to cover it. That was not based on anything in the record, Your Honor. That's just my understanding. Okay. Your understanding based on what? Just the practice of the way banks deal with overdrafts. These are consumer accounts for the most part, and if an overdraft was, to use the Chief Judge's example, $10,000, it wouldn't be done. That's my understanding. Do you have any reason to think that if it were a $500 charge, it would be treated different than an overdraft than a $10 overdraft? My understanding is, and again, discovery would inform this, my understanding is the banks do set criteria as to how much they will honor an overdraft, depending on the customer. Thank you. Good morning, Your Honors, and may it please the Court. David Zimmer for Police Citizens Bank, and I'm here with my colleague Brenda Shardman. Your Honors, the rule plaintiff is asking this Court to adopt would be a dramatic change in the law, reversing decades of consistent agency guidance and creating a circuit conflict with the 11th Circuit. Counsel, your statement immediately suggests that there is a categorical rule discernible in the regulations that excludes the interest determination that a parliament wants to make. Where do you find that categorical rule that would exclude the interest determination that they're seeking? In two places. First, in the 2001 rulemaking, the OCC explicitly stated, and this is at page 8180 of the proposed rules in the third column and the end of the first paragraph, that under the rule that the OCC ultimately adopted, that overdraft charges would not be considered interest and would be considered charges governed by Section 7.4002. And that, of course, was the rule that the OCC specifically ultimately adopted. Now, the language that Mr. Haber quoted is in the OCC's discussion of the rule that it rejected. So the OCC considered doing exactly what they did. You know, one could read this as the OCC acknowledged there was some ambiguity, that there was not a per se rule, that they then invited notice and comment. And when they got it, they realized that there were a large number of factual variations and that they did not feel confident in adopting a categorical rule. And so they sort of left a sense of ambiguity there. I think that's a fair reading of what OCC did until the May 17, 2007, letter. So I certainly agree with that. Okay, so now let's take the logic of Judge Lopez's question and apply it to the May 17, 2007, letter. Correct. So that's sort of where I was going, which was that I think I completely agree that even to the extent there is some ambiguity in 2001, the OCC definitively resolved that ambiguity in Opinion Letter 1082, which would just Well, of course, it didn't do it in notice and comment rulemaking. That's correct, Your Honor. But I think that it was really completely consistent with what the OCC had said in 2001. And, you know, I certainly agree. I don't know that the no deference because of inconsistency argument is really before us. Is what? Sorry, I didn't hear that. I think you may be going off on an argument that isn't really before us, that there was one reason one doesn't give deference to interpretations is if it's inconsistent with FLAA rules by the agency. I don't view that as our situation. I'm still back on Judge Lopez's very good question about the breadth of the relief that you are seeking and your categorical approach to this and why you think the May 17th letter in any way supports that. Well, because the question before the agency in Opinion Letter 1082 was, can the bank honor an overdraft and charge a sustained overdraft fee in response? And it's clear that from numerous places in the letter, the OCC made clear that the governing framework was 7.4002. So the validity of any fee, of any sustained overdraft fee, has to be analyzed under that framework, the 7.4002 framework, not the separate framework that governs interest charge on extension of credit. Of course, the letter doesn't explicitly say that. Well, it actually does explicitly say that. So if you look, for instance, at the end of Section 2A, the letter explicitly describes the overdraft fees at issue in this case as non-interest fees and charges. So I think that addresses it. At the end of Section 2C of the letter, the letter states that when a bank processes an overdraft item and recovers a fee for doing so, it is providing a service to its depositors in accordance with its federal authority under, among other provisions, Section 7.4002. In the conclusion, the letter says again that the bank is authorized by Section 4.002 to charge and recover fees for processing overdrafts. Counsel, when the bank agrees to honor an overdraft, isn't it in the most basic way extending credit to its depositor? No, Your Honor, not at all. And I think this is what the OCC has explained. What it really is doing is it's a method of – it's a service related to account balancing. It sounds like a semantic game, frankly. I mean, there are not sufficient funds in the account to honor the check, so rather than dishonoring it, they are, in the most basic way, they're extending a loan to the depositor, and to enhance the likelihood that they're going to get that loan back, they start charging these fees, which arguably are for the – to compensate the bank for the use of that money that they have loaned to their depositor. That's right. I respectfully disagree with that. And, you know, as the Eleventh Circuit and the agency have explained, that that's not the best way to think about what an overdraft is in the context of an overall deposit relationship. That what the bank is really doing is it's agreeing to vary its standard order in which it processes debits and deposits to an account. That it's agreeing as a service to its customers to take sort of this debit out of turn with the expectation that over the ordinary course of the customer's use of the account, there will be sufficient deposits made to ultimately clear that overdraft. And that's a fundamental – it's not just semantic. It's a really structural difference that's based on the relationship, the different relationships between the bank as deposit account holder and that bank as lender. And, again, this is exactly what the Eleventh Circuit recognized back in 1998. It's what the agency recognized most clearly in 2007 when it explicitly described the service of honoring an overdraft as a service related to internal account balancing, that it wasn't a form of extending credit. It's not a form of debt collection. So I'd like to, on that point, go to a question that I had asked earlier. The fees, the quote, fees, stop at some point. That's correct. And it's only like 10 or 11 days they stop. That's correct. That sounds to me more like a penalty than a fee. Well, those two are treated the same. If you look at 7.4002, there's sort of fees and charges. And one of the factors – Yeah, but you're calling them a service fee. So I'd like to know what they are. Yeah, well, they are a fee to compensate the bank for providing the service of varying the order in which debits and deposits are processed. Part of that service charge can, as the agency recognized, can account for sort of deterrence because this is not the way that deposit accounts are supposed to work. So it serves both of those roles. It doesn't have to be one or the other. And that's what 7.4002 explicitly recognizes. And it's what Opinion Letter 1082 recognizes. So is what you're suggesting that if there were discovery on what services actually go along that might match up with the service fee in some gross way, it's not going to actually show anything. It could be that if there were no services at all provided, it's just a penalty. Well, so there are – I mean, there clearly are services. We're trying to find out whether discovery could help or not help. I think certainly discovery wouldn't help. And the reason why is that all of these issues that you're getting at would really go at 7.4002. The question is whether it's a valid fee or a charge under 7.4002. And there's no allegation in this complaint that these fees violate Section 7.4002. That's not before the court. The question is whether it's interest or not. Exactly. So on that point, there's one sentence in your brief that I have not been able to understand. Maybe you remember it and maybe you don't, but it's on page 30 and it's a very short sentence. It's in the context of discussing the joint guidance and why we're not bound by the joint guidance statement. Whether an overdraft should be classified as an extension of credit is inherently context-specific. What did you mean by that? Well, what I mean is that what the joint guidance is getting at is really this sort of risks that banks can take on by providing this service. And I think that that sort of passing statement in that context doesn't shed light on this because it has nothing to do with the National Bank Act. And I think the Federal Reserve... But it's your statement. Right. So I think the point is that the fact that in this joint guidance that's completely unrelated to this case, there's this passing statement that characterizes overdrafts in this way doesn't mean that every time an overdraft arises, it has to be classified as an extension of credit. And that's explicitly made clear in the joint guidance when it discusses the Truth in Lending Act regulations, which were issued by the Federal Reserve, which was a party to the joint guidance. And those regulations state even more explicitly than OCC has stated that overdrafts are not extensions of credit. Counsel, on that point in the Federal decision, which is maybe the one decision that's not supportive of your position, I think it's in that decision that the district court cites, I don't know if it's Regulation O, but it talks about if a bank, if one of its customers overdraws its account, they get overdraft extension. And they call that, and it's referred to there as very specifically in the Federal Reserve regulation as an extension of credit. The court makes the point that there seems no difference between the kind of overdraft scenario that we're talking about here from the scenario they're talking about here. So if it's an extension of credit in that circumstance, why is there not an extension of credit in the circumstance as well? So I think that regulation, again, addresses the – it's not exactly the same situation because that's dealing with conduct by bank insiders. And the court in the second – The phenomenon is the same. Right, but again, this is what sort of I meant by the context-specific point. And again, court after court has recognized this. I mean, the Truth in Lending Act regulations characterize overdrafts in completely the opposite way. They specifically state that overdrafts, like the ones in this case, are not extensions of credit. So I think that what all of these – what the court in TD Night 2 correctly recognized in rejecting the federal decision was that you can't – it doesn't make sense to kind of look at all of this stuff from all over the place, that you have to look at the National Bank Act, what the National Bank Act was trying to accomplish. And as the 11th Circuit recognized in video tracts and as the agency has repeatedly recognized in this context, in the context of the National Bank Act, that overdrafts are best considered as service-related to the balancing of deposits and debits on a checking account. They're not – this isn't a form of credit extension. Suppose under the National Bank Act we had some variation in the facts here and the bank says it's our choice whether on a checking savings account we will honor an overdraft or not. But we're telling you that in addition to the fees we're going to charge, same fee, whether we honor or not, if you don't replenish the account in the amount of the overdraft immediately, we're going to start charging you a rate of interest at, say, 5%. And it will be compounded interest over a period of time. Now, that is not the case in front of us. But if we had that case, isn't it likely that we would reach a different outcome either under our deference or if there were no deference, if we just were analyzing it? So I think that because overdrafts are not extensions of credit, I don't think the way in which – I think that would be viewed under the OCC's guidance as a fee structure. But that has not been resolved. That's true. And the letter you rely so heavily on from 2007 does not address facts like that. That's true. So perhaps context does matter under the National Bank Act. It might. I agree that the letter doesn't resolve that. Of course, the facts in this case are specifically analogous to Opinion Letter 1082, not to the situation that you're suggesting. That was my point. Right. No, absolutely. And I agree. I think that the context – yes. So if the Supreme Court changes the deference owed, our deference owed, does that do anything to your argument? Well, no, Your Honor. And let me just briefly explain why. I mean, we think that under our – this is sort of an open and shut case under Opinion Letter 1082 because it just is the same situation. But even under the Skidmore framework, which is what the petitioners are advocating for in that Supreme Court case, the Opinion Letter 1082 is still entitled to significant persuasive weight. At the end of Skidmore, it identifies longstanding agency guidance as entitled to particular persuasive weight. This is an Opinion Letter that's 12 years old. There's no DOCC who's not done anything to suggest that it's – to change it. And it's also consistent with the overwhelming district court precedent and the only court of appeals decision in the 11th Circuit. So certainly this court can affirm without waiting for the Supreme Court's case. Counsel, can I just – one more time. I think you've answered this, and I'm probably just not getting it. Would you once more explain to me why overgrad protection is not tantamount to an extension of credit? Why is it something else? Because I think the reason is that it arises in the context of this overall checking account relationship in which the bank is processing a series of debits and deposits to the account. And the way that the agency has conceived of an honoring overdraft is simply the service of effectively just altering the order in which debits and deposits are processed. And it's impossible to think about a loan or a standard extension of credit in that way because the whole – Okay, so you don't go through an underwriting process. There's not a line of credit established. But in the most basic way, the depositor is getting a loan. The bank is extending. It may be to enhance relationships with the depositor. It may serve the bank's interest in that way. But still, it's loaning in order to avoid having the check dishonored. It is loaning money. It's not the depositor's money. The bank is loaning money to the depositor. Well, I mean, you know, I agree that what's happening is that the account is going into a negative balance. But I don't think that the way that the – I think that the way that the agency thinks about this and the way that the 11th Circuit and nearly every district court has thought about this is that it's not really a loan because the idea is that this is the customer's money. It's just the ordering of the deposits, that the deposits to clear that overdraft haven't come in yet, that there's an expectation that this is just an account-balancing service in terms of the ordering of the credits and debits. But if that expectation is not fulfilled, then you get these successive $30, $30 in charges. Right, because the bank is providing a service in ordering these debits and deposits in a nonstandard order, that they're varying their standard practice. And what the bank is doing is a service that costs money to administer. It's a policy that takes time to administer, that takes time to implement. It has monitoring costs associated with it. There's outreach to the customer involved. And that service costs money. Now, everything you're describing there sounds like something that a court will learn through the process of discovery. You're making representations now about what the purpose would be of those $30 fees. There's nothing in the record that supports that. If the record supported what you're saying, then perhaps this would fall under a different regulation. But the point is that these are issues that all arise under 7.402. And court after court have recognized that these are just aspects of overdraft practice. For instance, the TD Bank 2 case discussed this at length and addressed all these concerns right at the end of the opinion. And that's a motion to dismiss case as well. Again, we're not talking about that there has to be any specific things, but there's no plausible allegation here that there are no services provided here. I think that it costs the bank money to administer this service. I'm well over my time. Thank you very much. Mr. Haber, because we took extra time, if you want four minutes, you can have four minutes. Thank you, Your Honor. I don't know that I'll need it. I think that today's hearing and the colloquy that you've had with both myself and with Counsel for Citizens Bank, I think actually really highlights and demonstrates that the issue of whether or not the advancing of these funds to the customer when honoring an overdraft is an extension of credit is a classic mixed law fact question. It is a question that can't and shouldn't be decided on pleadings. It is a question that should be decided, obviously, in the first instance in the district court on the basis of a full factual record. You know, here's one problem with that argument. The May 17th, 2007 letter absolutely does not depend on any of the facts that you say you consider to be material and which you would like to obtain in discovery. Your Honor, that letter does not address those things because that letter is... So we're back to your argument about why the letter does not control in this case. But if we do think it controls in this case, then all of those other things are irrelevant. I respectfully submit, Your Honor, that it does not control. Okay, I understand that argument. And if I could explain... You've only got four minutes. I understand. I think that there's a... It would be truly... I can't say unprecedented. I'm not that much of a student of the law. But I think it would be remarkable if a court gave our deference or really any deference or interpreted a statement by a regulator that doesn't address the regulation at issue as interpreting the regulation at issue. The OCC full well knows its regulations. It full well knows what 401 covers and what 4012 covers. And it knows explicitly what it said that I quoted earlier in terms of that whether or not the advances or extension of credit is possible under these circumstances. And the OCC expressly said in 2001 that whether it's an extension of credit is possible under these circumstances. And to read an interpretive letter of the OCC that doesn't address extension of credit, doesn't deal with the issues Judge Lippes was asking about at all, doesn't even use that phrase once, and doesn't address the regulation that is at issue in this case to infer that the OCC was dealing and deciding the issue before your honors, when it wrote that letter without making any reference to the regulation at issue, I think, is simply mistaken. And I understand, Judge Lynch, that you think that that has a lot of force here. But I respectfully submit that that's not so. And that the key issue here is whether it's an extension of credit. If it was an extension of credit on the unambiguous face of the regulation, this was interest. It was a late fee, as the Chief Judge commented. It was a payment for the advancement of credit. And it was a payment for failing to live up to the agreement for the advancement of credit, which was to repay it promptly. And so, at the end of the day, this Court has to decide whether, and I submit that the answer is no, whether or not the question of whether there was an extension of credit here could be decided on the pleadings as a matter of law. I respectfully submit that it can't and it shouldn't. The case should be reversed and remanded for further proceedings. Thank you very much. Thank you both.